Good morning, Your Honors, and may it please the Court, my name is Heather Goodson-Zachary, and I represent the appellant in this case, the trustee, Ray Fulmer. The central issue in this appeal can be boiled down to this. Can a trustee pursue claims against independent third parties, notwithstanding a 363 sale, where the causes of action pursued by the trustee do not attempt to undo the sale or challenge the transfer or ownership of the property? The short answer is yes. 363M only protects the parties to the sale and the sanctity of the property transfer. Counsel, you may want to slow down a little bit. I don't hear quite that fast. Yes, sir. It does not create a cloak of invisibility, as it were, that protects all of the language included within the sale order, additionally, all of the parties that were in any way related to the sale. Collateral estoppel does protect, to some extent, the factual findings that were actually and necessarily litigated, but collateral estoppel in res judicata cannot apply to this trustee for a myriad of reasons, primarily because he was not a party to the sale, nor is he in privity with anyone who was a party to the sale, and he acts on behalf of creditors who were also not parties to the sale. Why weren't those creditors parties? Your Honor, that's a good question. As the trustee has detailed in his brief, the creditor body, the entirety of the creditor body, received statutorily and constitutionally insufficient notice of the sale of substantially all of the assets. The lower court... How did that lack of notice prevent action before the expiration of a couple of years, or at least a year beyond the sale? Your Honor, the trustee was not appointed until well into that year period, but the year period that you're referencing from 60B actually doesn't apply in this case because the trustee is not attempting to collaterally attack the terms of the sale order, and that principle comes from this court's decision in the Enright-Brook Valley case, where this court held that foreclosure sales or 363 sales, any sale that is an in-rim type proceeding, cannot be collaterally attacked. But the court went on to hold that in that case, because the trustee was attempting to bring actions for breaches of fiduciary duty to the estate, that that was not a collateral attack, and so 60B simply didn't apply in that case. The first error of the bankruptcy court in this case was concluding that the trustee's claims constitute a collateral attack on the sale order. This court has made clear, as I said in the Brook Valley 5 decision, that where a trustee brings a cause of action for breaches of duty to the estate, even if those breaches are in connection with the sale, that those causes of action do not collaterally attack the underlying sale order. This is because those actions arise not out of the sale, but out of the relationship of the third party to the estate, and the duties that the third party has to the estate. The appellees argue that the decision in Inouye Brook Valley is not applicable here, because it was a foreclosure sale rather than a 363 sale, but that's really a distinction without a difference. 363 and foreclosure sales are both in-rim proceedings, and in fact, this court actually cited to the region's bank decision in the Brook Valley case for the proposition that in-rim proceedings cannot be collaterally attacked. But notwithstanding that citation to the 363 case, this court nonetheless held that because the trustee was attempting to bring an action for a third party breach of duty to the estate, that that did not constitute a collateral attack. And so relief under Rule 60 was irrelevant in that case. The principle adopted in Inouye Brook Valley has also been adopted by the Second Circuit in the Brown Media case that we cited in our brief. And in short, what that case also recognized was that where a plaintiff is attempting to recover from independent third parties for breaches that those third parties enacted against the plaintiff, that those actions arise out of the relationship between the third party to the plaintiff and do not arise out of the sale, even if the facts complained of and the circumstances were a 363 sale, that that's not the proper consideration. And that's actually in line with this court's decision in the Regents Bank case, which was cited extensively by the appellees. In that case, the court additionally noted that 363M only protects the parties to the sale and the transfer of the in-rim property within the sale. The court noted in that case that they were disallowing the Regents Bank claim because it arose out of or related to the sale of the collateral. But the difference in Regents, in this case, is striking. In Regents, Regents Bank did not have any third party or fiduciary contractual duties or relationship with J.R. Oyl, the defendant in that case. So there's no way that the claims that Regents was making could arise out of anything other than the sale. In contrast, in this case, like the decision in Inouye Brook Valley 5 and like the decision in Brown Media, the claims, even though they involve the context of the sale, do not arise out of the sale of the property. Instead, they arise out of these fiduciary and contractual and court-appointed duties that these fiduciaries had to the estate. The appellees also argued that the claims of the trustees should be barred because they relate to integral provisions of the sale order. Now, the interesting fact here is that what the lower courts did is that they basically confused 363 protections with res judicata and collateral estoppel protections. 363 protections, as I have said, protect the parties and the property that's transferred there under. Collateral estoppel and res judicata, on the other hand, do protect the findings that were actually and necessarily litigated, but those protections do not apply. They don't apply to everyone that has anything to do with the proceeding. They only apply to those people that are in privity with the entities that were parties to the initial sale. So, the argument that the findings that were made by the lower court are integral to the sale order, that actually goes to res judicata. That's not a 363 consideration. What this court laid out in Trism— What's the essential unfairness of having finality in the bankruptcy sale to the plaintiffs in this case and to the trustee and who the trustee is representing? I'm trying to grasp here on these facts what the grave injustice that you seek to redress is. Your Honor, there's multiple injustices, but to sum it up in a short summary, someone once told me that bankruptcy courts do an awful lot of ill to people, that they undermine liens and they take property away from people and they give you cents on the dollar for your property, but they do all of that under a code that requires substantial notice and opportunities to participate to all of the creditors. And here, that opportunity to participate simply wasn't given. And so— Why was that? Because the way that the notice was given in this case— So, going through the docket, on December, I believe it's the 23rd, it's docket entry 350, the lower court, the defendants filed the motion to sell substantially all the assets. That motion, which detailed the context of the sale, who it was going to potentially be to, how much it was going to be for, what property was going to be sold, was not provided to the entire creditor body, which was in excess of 5,000 people. I think it was provided to 84, something like that. So, the entire creditor body had no way to know the details of what was potentially up on the auction block. Now, the Appellees did provide a notice, but the notice simply said that bidding procedures and a stocking horse bidder had been adopted by the court and that potentially some of the Allens property, again, it didn't identify what of the property, some of the Allens property was potentially going to be up for sale. Now, this notice is constitutionally and statutorily insufficient for a myriad of reasons, but the case law has explained that notice under 363 where you attempt to sell substantially all of the assets needs to, at a minimum, do these things. Disclose accurately the full terms of the sale, explain the effect of the sale as terminating the debtor's ability to continue in business, and explain why the proposed price is reasonable and why the sale is in the best interest of the estate. That comes from the NRA Delaware and Hudson case that was cited in our brief. So, you're saying these individuals, or the trustee, was aware there was going to be a sale, but wasn't notified of the details of the sale? Correct, Your Honor, and that's critical in bankruptcy proceedings because the creditors... Did the details include when and where? The detail in the notice did include when and where, except that it was actually inaccurate. It stated that the sale was going to be on February 10th, and the sale hearing was actually conducted on the 11th. What justifies the delay in seeking relief after the sale? Since there was notice of the sale, and there may have been details missing, but why the extensive delay? There's a couple answers to that, Your Honor, a practical and a legal answer. The practical answer is the post-sale memorandum has not yet been filed in this case. So, the sale order was filed, but there was never the document filed that consummates the sale and lays out all the details of it. The sale order itself was also not served on the entire creditor body. So, there are potentially still creditors today who do not know that the Allens property has been sold and what the context of that sale was. Legally, again, as I said, the delay is really not just... The question of the one year under 60B is not relevant here. The only relevant question for timing purposes is a statute of limitations question. And the trustee has not... There's been no argument that the trustee has violated the statute of limitations in this case in bringing this light. When was the trustee appointed with respect to the sale? I believe the trustee was appointed approximately eight months after the sale, but I don't have that in my notes exactly. But he was appointed within the year period. But part of the problem, again, practically, was that he was appointed to an estate that had no money with a creditors committee that had a gag order that basically precluded anyone in the creditors committee from speaking to anyone about any of the context of the sale. The auction took place in a lawyer's office where they turned the record off and on sort of conveniently during the sale. So the entire process was not transparent as is required in bankruptcy proceedings. And again, you can see the failure of this with the notice or lack thereof that was given throughout the bankruptcy proceedings. So they provided notice that they were going to sell some of the property potentially to Seneca, that they had authorized Seneca to be the stocking horse bidder. And they said, if you would like to know the details of this, go see the Seneca APA. If a creditor was interested and went to see the Seneca APA, what they would find in that APA is that approximately $100 million was going to remain in the Allens estate after the Seneca sale. At no point following that notice when they said, here's the Seneca APA, go look at it if you want to, we're not going to attach it for you, you've got to go find it. At no point did they then come back and say, by the way, the details of this sale have changed, if you want to see the new details, go see the Sager Creek APA. They filed the Sager Creek APA, but they didn't serve it on the entire creditor body. And the import of that is huge, because the Sager Creek APA, rather than leaving $100 million in the estate, left nothing. So creditors who believed initially that they were going to be getting a distribution from this remaining $100 million in the estate, have nothing. They received nothing. Counsel, you're in your rebuttal time. You can continue if you like, or you can reserve. I think I'll reserve, thank you. May it please the court. Excuse me. My name is Marcella Lape, and I represent the defendant at police. This case involves an improper collateral attack on a final Section 363 sale order that was issued in February 2014. That order authorized the sale of substantially all of the assets of Allens. In that order, the court found that the auction and sales process was free from collusion and fraud. That the consideration to be provided by the buyer was fair and reasonable. That it was the highest and best available offer. That it was in the best interests of the debtor, the creditors, and the debtor's estate. At what date did the bankruptcy court issue the sale order? It was in February of 2014. February 14th, I believe. The sale became final on February 28th, 2014. The trustee was appointed in this case in June of 2014. And yet, almost two years passed before this action, this adversary proceeding, was filed. What's the significance of that? Do you say there's a time limit that was passed? The significance, Your Honor, is that after the sale became final. No, I mean, what's the significance of the two years? The significance of the two years is, again, after the sale became final, you would only be permitted to attack it if you could satisfy certain procedural requirements. And those are under Rule 60, as applied to the bankruptcy courts through Rule 9024, Your Honor. And so here, the basis for the trustee's claim basically comes down to the idea that there was some sort of fraud or wrongdoing as part of the sale process. So naturally, the way that you would attack that sale order would be through 60B3. The problem, of course, is that there's a one-year time limit in Rule 60C. And so that's not applicable to the trustee here. Well, their claim is that there was fraud on the court. And that how they want to get around the time is that if there's fraud, then the court is still able to undo what was done. That's correct, Your Honor. If there is fraud on the court, it's not subject to that one-year time limitation. Here, however, the bankruptcy court properly found that there's just not evidence sufficient to plead a claim for fraud on the court. Fraud of the court requires much more than what the trustee pled here. It requires that there be egregious conduct that defiles the court. It requires conduct such as the bribery of a judge, manufacturing of evidence, lying to the court where you have an affirmative duty to be honest and to tell the court something. That just simply didn't happen here. So is it your position that the case could be resolved just on the one-year time limit without getting into the application of 363M or claim preclusion? Or would you have to get into those as well? 363M is not applicable in this case. But you would have to rely on re judicata. Okay, so you're not relying on 363MR. No, Your Honor. 363M is a section that bars a direct appeal of a sale order. Well, that's what I thought. That's how it reads. But I thought the, okay. I understand. Yeah, if you look, it's been confusing throughout this whole case, Your Honor. If you look back at the bankruptcy court's initial opinion on the motion to dismiss, he says 363M is not applicable here. Okay, so your first position was the one-year time limit bars the proceeding under Rule 60B3. That would be an exception to re judicata. But the real reason that this court should affirm the district court's dismissal of the opinion is because re judicata bars the trustee from bringing this cause of action. How are the, I detected from the appellant that they didn't think there was an identity or privity between the creditors previously and then now those represented by the trustee. Why is that incorrect? Why do we have the same parties so that re judicata could apply? Sure. Well, so there's two things at play here. One is the idea that there's privity between the trustee and the creditors. And then the other idea is whether or not those creditors received notice. So starting with the notice issue, contrary to what the trustee argues, all of the creditors here, in fact, did receive the notice that was required. For procedural due process requirements, all that's required is notice of the sale and an opportunity to participate and object. And they all received that. On January 9th, the debtors filed a notice of the bid procedures, the sale hearing, and a notice of the deadline of objections. That was sent to all creditors on January 10th. That met the procedural requirements in Rule 2002C. It provided the date of the hearing. It provided the location. Now, it did not provide certain information that's required of a private auction, but that's because it was a public auction. So all of those creditors did receive notice. So then turning back to the privity issue, the trustee has argued various times that, well, he cannot be stopped by re judicata because he wasn't a party to the sales proceeding. But he stands in privity with those creditors that he now represents who did receive notice and an opportunity to object. And he also stands in privity with the debtor in possession, whose shoes he stepped into once this case was converted to Chapter 7. There's also privity here with the defendants. In the context of re judicata, in a bankruptcy proceeding, it's not kind of the traditional re judicata that one may think of where there's a plaintiff bringing a case against a dead defendant or more defendants and there's specific causes of action. In a sales proceeding, it's a forum where a lot of parties are coming together, the debtors, the creditors, potential bidders, and they're all coming together in the sales proceeding to figure out what the best outcome is for the debtor's estate. And so it's not just the actual parties to the sale order itself that have privity and that were part of that proceeding, but it's all of those parties that were represented, whose interests were represented there and who participated in that. And that includes all of the defendants here. Now, the trustee also challenges whether or not the same causes of action or the same claims were in the sales proceeding that are here in the adversary proceeding, and they are. To have similar or the same claims for re judicata purposes does not mean that it's the exact same cause of action that was brought in the sales proceeding and that's brought here. It just means that they have to arise out of the same nucleus of operative fact. They have to come out of the same factual predicate. And here there's no question that the claims that the trustee is bringing arise out of the auction and sales process. Each of the 14 claims that the trustee brings directly implicates whether Sager Creek was a good faith purchaser, whether the auction and sales process was fair, whether there was manipulation or collusion in the bid process. All of those issues. However, the trustee frames his causes of action. Those were the exact issues that the bankruptcy court was deciding. Should this sale be approved? Is this in the best interests of the debtors, the creditors, the debtors of state? Should the purchaser, Sager Creek, be afforded good faith purchaser status? The court made these decisions and the trustee cannot now attack them. Now even if for some reason there was not privity in this case, the trustee's claims would still be barred and that's because of this court's holding in Regions Bank. This court held that after a 363B sale is final and the time to appeal passes, that order is good as against the world, not just as against the parties to the proceeding. And what that means is that afterwards, that order is protected from a collateral attack. It's shielded. By what? By the nature of the transfer of assets in the interim proceeding. But I mean, what prevents a collateral attack? What provision of law or what legal doctrine? Where does this Regions Bank idea come from? It stems both from traditional principles of re judicata as well as the finality principles that are so important in a bankruptcy proceeding. What does that mean? Well, Your Honor, ask. Go on. Is that a source of law, the finality principles that are important in bankruptcy proceedings? You asked earlier about Section 363M, Your Honor. The BAP seemed to think 363M applied. The trustee said it didn't apply because it's not an appeal, which is what you said. The BAP says that's not persuasive. But did you lead the BAP down this road? No, Your Honor. We did not lead the BAP down that road. But the finality principles that are drawn from that Section 363M and those finality principles are that a bankruptcy sale, the finality is so important in order for there to actually be a market for assets. They're so important that you can't even directly appeal a bankruptcy order where there's a good faith purchaser. So that same finality that's drawn from 363M comes into play in Regions Bank where they're saying with regards to a 363B order, free and clear of all liens, with a good faith purchaser, that's an order that's good as against the world, not just to the parties to the sale proceeding. Well, I don't think I understand, but I'll try to figure it out. Okay. I mean, 363M is a specific provision that bars collateral attacks. But to go beyond that, I'm not sure what the authority would be for that. There's no statute that bars collateral attacks that are separate from an appeal. There is the doctrine of res judicata. But you seem to be adding another theory. I believe it's the application of res judicata as applied to Section 363 sale orders and proceedings that transfer property. And it's a holding in a controlling Eighth Circuit case. Now, this doesn't mean that the trustee would never have an avenue for relief if there was fraud in a Section 363 sale. We talked earlier about the fact that there would be a potential avenue for relief under 60B3, but that's time-barred here. A potential avenue for relief under fraud on the court. But the trustee didn't plead facts to establish fraud on the court. And then there are other potential avenues for relief under 60B. None of those apply. So here, although it's not in the trustee's complaint, through his briefing and on appeal at the BAP, he raised additional arguments regarding due process. I've already explained that the creditors here did, in fact, receive procedural due process. They had notice and an opportunity to appear and object to the sale. The trustee also raises the issue of whether or not the sale order should be barred by the Supreme Court's holding in Jevik. That holding has no application to this case at all. It involved a structured dismissal, and it was decided in 2017, more than three years after this sale order. Jevik could not be applied to overturn a sale order, in effect, for three years. And the trustee also argues that the creditors were denied due process because the bankruptcy court did not make the necessary findings for Rule 63B sale order to be authorized. And that's just not true. While it is true that no specific evidence, no witnesses were put on during the sale order, that does not mean that the court did not make findings and informed findings. The court was aware that there were witnesses present that could put on testimony, but the court was also aware that all of the objections to the sale had been resolved. And the court had in front of it the APA, the backup APA, it had the auction transcript, and it had sat over the case for four months with over 600 DACA entries. And the court determined on the record that it would take into account everything it had learned throughout the case and everything it had heard and the content of the APA and the auction transcript in approving the sale. Unless your honors have any other questions. I just have one thing. If you look at, I'm going back to where we're looking at, where the source is, and looking at 363 and then reading Regents Bank, I take it your argument is that Regents Bank is binding precedent for the proposition that in the absence of some showing that there was not good faith, not fair value given, or some fraud was presented to the court, that in the absence of any of those things, the sale is final and cannot be collaterally attacked. That's correct, your honor. In the absence of a basis to collaterally attack the sale under Rule 60, or there's a statutory exception, 363N, Regents Bank is binding precedent that the sale is final. All right. Thank you, your honors. And where do you think that rule comes from? That's what I wanted to understand better, the Regents Bank rule. If it's not 363M and it's not res judicata, what's the basis for it? I think it stems from 363M, but that is not clear in the decision itself, your honor. Well, by its terms, 363M wouldn't apply, as you said, because it's not an appeal. Correct, but the idea behind 363M is that the finality in a bankruptcy sale is so important that it would even moot a direct appeal. And so this is not a direct appeal. This is a collateral attack, and so those same finality and principles, the same idea that you have to have finality so that there's a market for the assets, I think that's where it comes from. Thank you, Ms. Leib. Thank you. Your honors, I think the central error in the Apolli's point is that the trustee is not attempting to collaterally attack the sale in this case. By her definition of arises out of the same nucleus of operative facts, that basically would overturn this court's decision in the Brook Valley because unquestionably the claims that were brought, the breach of fiduciary claims that were brought in Brook Valley arose out of the same nucleus of operative facts that the foreclosure sale happened under. And it would also mean that this court was creating a circuit split with the second court from the Brown Media case. If this isn't a collateral attack, how do you characterize it? It's simply a claim for breaches of contractual and fiduciary duties.  Just like you would bring against your attorney if you believe that they committed malpractice or if you would bring against your accountant if you believe they did your taxes wrong. It's the same sort of breach of professional duty that was owed to the estate. Also on the issue of privity, whether or not the trustee is in privity with anyone who was a party to the initial sale, this court established in the N. Ray Marlar case that if there is a creditor who was not afforded notice and an opportunity to participate in the actual sale proceeding, then the trustee can maintain the claim. And here, it's obvious that there were an entire body, over 4,000 creditors who were not provided sufficient information regarding the terms of the sale. And this court has already stated that knowing the terms of the sale is critical in establishing whether or not there was notice.  But stated that it was sufficient in light of the changed terms of the sale. So that language alerts us to the fact that creditors are entitled to know at least generally what the terms of the sale were. And here, the creditors were given no notice of any sort that over $74 million in preference actions were going to be given away for free. That was not mentioned in the Seneca APA. It was brought to light only through the auction that happened four days before the sale. And there was no notification provided to any of the creditors related to that. And finally, as far as fraud on the court, we have pled that there were certain legal required disclosures that were not made. And this court has held that required legal disclosures that are not made amount to an affirmative misrepresentation sufficient to support fraud on the court. But like I said, we don't need fraud on the court because we're not attempting to challenge to collaterally attack the order under 60B. Thank you, counsel. Thank you. The court thanks both attorneys for coming to court today and providing a helpful argument to us as we attempt to wrestle with these issues. We'll take the case under advisement and render a decision in due course. Thank you.